*O*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO PLACENSIA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-09056-MEMF-AS<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 14]** |

Before the Court is a Motion to Remand filed by Plaintiff Alfredo Placensia. Dkt. No. 14. For the reasons stated herein, the Court DENIES the Motion to Remand.

///

///

1

I.  **Background**

    A.  **Factual Background** [1]

Plaintiff Alfredo Placensia is a resident of Adelanto, California. Dkt. No. 1-1 ¶¶ 1-2 ("Complaint" or "Compl."). Defendant General Motors LLC ("GM") is a limited liability company incorporated and organized under the laws of the State of Delaware and is registered to conduct business in California. *Id.* ¶¶ 3-4. Defendant is engaged in the business of designing, manufacturing, and selling motor vehicles and motor vehicle components. *Id.*

On or around March 28, 2021, Placensia purchased a 2021 Chevrolet Silverado 1500 ("Subject Vehicle") manufactured and/or distributed by GM. *Id* ¶¶ 6, 9. At the time Placensia purchased the Subject Vehicle, he received express written warranties through which GM undertook the duty to preserve or maintain the utility or performance of the Subject Vehicle, or to provide compensation if there were a failure in utility or performance for a specified time period. *Id.* ¶ 11. In relevant part, the warranty provided that if a nonconformity developed during the applicable warranty period, Placensia could deliver the Subject Vehicle to GM's authorized service and repair facilities, and it would be repaired. *Id.*

The Subject Vehicle developed defects covered by GM's express written warranties, including but not limited to engine defects. *Id.* ¶ 12. These defects substantially impair the use, value, and/or safety of the Subject Vehicle to Placensia. *Id.* Placensia delivered the Subject Vehicle to GM and/or its authorized service and repair facilities for diagnosis and repair of the defects. *Id.* ¶ 13. GM failed to service or repair the Subject Vehicle to conform to the express warranties and subsequently failed to promptly replace the Subject Vehicle or make restitution to Placensia. *Id.* ¶¶ 14-15.

    B.  **Procedural History**

On April 4, 2025, Placensia filed his complaint against GM in the Superior Court of California for the county of Los Angeles. *See* Compl. The Complaint contained five separate causes

---

[1] Except as otherwise indicated, the following factual background is derived from Plaintiff's Complaint. Dkt. No. 1-1 ("Complaint" or "Compl."). The Court includes these allegations only as background and makes no finding on whether they are true.

of action against GM: (1) Violation of Subdivision (D) of California Civil Code Section 1793.2; (2) Violation of Subdivision (B) of California Civil Code Section 1793.2; (3) Violation of Subdivision (A)(3) of California Civil Code Section 1793.2; (4) Violation of the Implied Warranty of Merchantability (Civ. Code § 1791.1; § 1794); and (5) Violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301-2312). *Id.* GM filed its answer on July 1, 2025. Dkt. No. 1-2. The first, second, third, and fourth claims are brought under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"). Cal. Civ. Code. § 1790 *et. seq*.

On September 10, 2025, GM filed its notice of removal to the Court on the grounds of diversity jurisdiction. *See* Dkt. No. 1 ("Notice"). Placensia filed his Motion to Remand on October 3, 2025, arguing that GM's removal was untimely and substantively deficient, and thus remand is necessary. *See* Dkt. No. 14 ("Motion" or "Mot."). GM filed its Opposition on October 17, 2025. Dkt. No. 17 ("Opposition" or "Opp."). Placensia filed his Reply on October 24, 2025. Dkt. No. 18 ("Reply").

## II. Applicable Law

### A. Motion to Remand

The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). Civil actions may be removed from state court if the federal court has original jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, … original subject-matter jurisdiction [must] lie[ ] in the federal courts."). A plaintiff, as "master of the complaint, 'gets to determine which substantive claims to bring against which defendants … [to] establish—or not—the basis for a federal court's subject-matter jurisdiction.'" *California ex rel. Harrison v. Express Scripts, Inc.*, 154 F.4th 1069, 1077 (9th Cir. 2025) (quoting *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025)).

The defendant has thirty days to remove a case after receipt of the complaint where the grounds for removal are clear on the face of the complaint, or if not clear, thirty days after receipt of some other document that shows the case is removable. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) ("Section 1446(b)(1) and (b)(3) specify that a defendant must

remove a case within thirty days of receiving from the plaintiff either an initial pleading or some other document, if that pleading or document shows the case is removable."). If neither thirty-day deadline is triggered, the defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id.*

When there is doubt regarding whether the right to removal exists, a case should be remanded to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) (*citing Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Further, a removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

As a result, removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). Courts resolve all ambiguities "in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing defendant must establish by a preponderance of the evidence that the amount in controversy "more likely than not" exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Under these circumstances, "both sides submit proof and the court decides, by a *preponderance of the evidence*, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)) (emphasis added). To meet this standard, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim*

*Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation and internal quotation marks omitted). Indeed, the parties must provide the court with "real evidence" that illustrates the "reality of what is at stake in the litigation" to guide the court in its assessment. *Id.* at 1198.[2]

### III. Discussion

#### A. GM's Notice of Removal Was Timely Because the Complaint was Indeterminate as to Subject Matter Jurisdiction.

Placensia first argues that GM's removal was untimely under 28 U.S.C. §1446(b) because it was filed more than thirty days after it was served with the Complaint, rendering it procedurally defective. *See* Mot. at 4. GM argues that neither thirty-day deadline under §1446(b) was triggered because the Complaint was indeterminate as to citizenship and the amount in controversy, and only after its own investigation did a non-speculative basis for removal become apparent, making its removal timely. *See generally* Opp. Placensia's argument focuses on the Magnuson-Moss Warranty Act claim. *See* Mot. at 4-9. Placensia argues that because the MMWA claim is a federal cause of action, this should have been sufficient to show grounds for removal on the basis of federal question jurisdiction. *See id.* at 5. Although MMWA is a federal cause of action, for a federal court to hear it, the amount in controversy must exceed $50,000. *Kelly v. Fleetwood Enters.*, 377 F.3d 1034, 1037 (9th Cir. 2004). GM addresses both the MMWA claim and diversity jurisdiction, arguing that because the Complaint was indeterminate as to the amount in controversy, there were no grounds clear on the face of the Complaint triggering GM's duty to remove.

    i. <u>Placensia's complaint was indeterminate as to diversity jurisdiction.</u>

---

[2] GM argues that both Placensia's reliance on *Gaus v. Miles* for the strict construction of removal statutes applying to procedural exceptions and Placensia's characterization of the burden to show subject matter jurisdiction as a heavy one are wrong. *See* Opp. at 1, 8. As to the burden of proof argument, the Ninth Circuit explicitly clarified in *Sanchez v. Monumental Life Ins. Co.* that the burden of proof a defendant must show is a preponderance of the evidence. *See Sanchez*, 102 F.3d at 404. And as to the strict construction argument, the Court finds that *Breuer v. Jim's Concrete of Brevard, Inc.,* does make clear that the strict construction of removal statutes is not intended to apply to removal statutes having to do with procedural exceptions. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697-98 (2003) (finding that the strict construction of removal statutes called for in *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941), was superseded to the extent it would apply to exceptions by the language of 28 U.S.C. § 1441).

To trigger the thirty-day deadline under §1446(b)(1), the defendant must be served with a complaint which clearly reveals the ground for removal. *See Roth*, 720 F.3d at 1123; *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005) ("[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin."). To trigger the second thirty-day deadline pathway under §1446(b)(3), the defendant must be served with an amended pleading, motion, order, or other paper that makes a ground for removal "unequivocally clear and certain." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021).[3]

Here, the Complaint does not reveal sufficient information to trigger removal on the basis of diversity jurisdiction. Even assuming that Plasencia's complaint made his citizenship clear, the Complaint does not plead any specific amount at issue. *See generally* Compl. Placencia argues that while he did not allege a specific dollar amount in controversy, the amount in controversy is nevertheless ascertainable on the face of the Complaint. *See* Mot. at 5-8. He notes that he included the civil case cover sheet, which indicated that the claim was being brought under the state court's unlimited jurisdiction, which is for damages over $35,000. This fact does little, as this checkbox refers to the amount demanded, and does not distinguish actual damages from other penalties demanded, including the two-times purchase price Placensia seeks. *See id*. at 8, 8 n.1. Thus, this does not show the amount in controversy is met.

Placensia also highlights that his Complaint included (1) the Subject Vehicle's make, model, VIN, and year; and (2) damages sought, including restitution for the purchase of the Subject Vehicle, incidental and consequential damages, civil penalties of two times actual damages, and attorney's fees. *See id*. at 7-8. This, he argues, given GM's sophisticated knowledge as manufacturer of such vehicles, was enough for GM to make a plausible allegation as to the amount in controversy, and

---

[3] Neither party relies on nor refers to another document served by Placensia in this case, so this second pathway is inapplicable here, as seemingly conceded by both parties. *See* Mot at 8-9; Opp. at 7. Furthermore, although GM admits Placensia served it with the RISC and payment history on September 2, 2025, this is not the only document it relied on in finding that the amount in controversy is met, so the second pathway remains inapplicable. *See* Dkt. No. 17-1. Even if it were applicable, Placensia provided the RISC and payment history on September 2, 2025. *Id.* GM filed the notice of removal on September 10, 2025, within thirty days of receipt of such documents. *See* Notice. Thus, even if the second thirty-day deadline were triggered, GM filed prior to its expiration.

thus triggered the first thirty-day deadline for removal. *Id*. at 6-8. But this "plausible allegation" standard, as articulated in *Dart*, is the standard for assessing a defendant's removal allegations, not whether a defendant is *obligated* to remove a case within the thirty-day deadline. *See Dart*, 574 U.S. at 89. Because GM could have plausibly alleged the amount in controversy does not mean the thirty-day deadline was triggered. The Ninth Circuit addressed the question of what triggers the thirty-day deadline in *Harris*, holding that the deadline only triggered by grounds for removal affirmatively revealed, and has affirmed this holding since. *See Harris*, 425 F.3d at 695; *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013) (applying the same principle to hold that the defendant was "not obligated to supply information which [plaintiff] had omitted.").

Also, GM's subjective knowledge or ability to gather information is irrelevant; the focus is on the information made available through the pleadings, and GM had no duty to investigate. *Harris*, 425 F.3d at 694 ("notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."). Just because GM *may* be capable of determining the amount in controversy based on information in the complaint, it does not mean it is then *obligated* to make such a determination and remove within the thirty-day deadline. *See id*. at 697.

Because the Complaint does not make the amount in controversy clear on its face, it was indeterminate as to diversity jurisdiction and did not trigger the first thirty-day deadline for removal.

### ii. Placensia's complaint was indeterminate as to federal question jurisdiction.

Placensia argues that the first §1446(b) thirty-day deadline was triggered because his Complaint contained a Magnuson-Moss Warranty Act ("MMWA") claim. *See* Mot. at 5. The Magnuson-Moss Act allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" to bring a "suit for damages and other legal and equitable relief" in "any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1). Magnuson-Moss also establishes that no such claim may be brought in the United States District Courts "if the amount in controversy of any individual claim is less than the sum or value of $25" or "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs)." 15 U.S.C.

§ 2310(d)(3)(A)-(B). Therefore, for federal courts to hear MMWA claims, the amount in controversy must be at least $50,000. 15 U.S.C. §2031(3)(B). As established above, the amount in controversy is not ascertainable on the face of the complaint. Therefore, given the MMWA requires the $50,000 threshold amount in controversy to be met, the first §1446(b) thirty-day deadline was not triggered as to federal question jurisdiction.[4]

For the reasons discussed above, the Court finds that GM has met its burden of showing removal was timely. The Complaint did not make clear on its face that more than $50,000 or $75,000 was at stake, and no other pleading or paper was filed that would fully clarify it. Therefore, neither thirty-day removal deadline was triggered, and GM was allowed to remove upon discovering valid grounds for removal through its own investigations. *See Roth*, 720 F.3d at 1123.

**B. GM Has Shown by a Preponderance of the Evidence that Diversity Jurisdiction Exists.**

Placensia next argues that GM has failed to show by a preponderance of the evidence that removal was proper. *See* Mot. at 9-11; *see generally* Reply. GM argues it has shown diversity jurisdiction, rendering removal proper. *See* Notice at 2-6; *see* Opp. at 16-19. Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Placensia does not challenge GM's citizenship allegations, where he is a citizen of California, and GM is a citizen of Michigan and Delaware. Notice at 3. Thus, complete diversity exists.

However, Placensia contends that GM has failed to sufficiently show that the amount in controversy has been met to establish subject matter jurisdiction. *See* Mot. at 9; *see generally* Reply. GM argues that it has established by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See* Opp. at 16-19. Where the amount in controversy is unclear or ambiguous on

---

[4] GM discusses the potential uncertainty with how courts in this circuit evaluate the amount in controversy under MMWA, with some strictly interpreting it such that remedies such as civil penalties would not be included, and others interpreting it to include civil penalties. *See* Opp. at 10-11. However, the Court need not determine whether civil penalties would be included in the MMWA claim because it finds that Placensia's complaint was indeterminate as to any amount since it did not state any specific values for damages under any cause of action. There is then no way that even civil penalties alone would be enough to implicate the amount in controversy threshold.

the face of the complaint, the defendant must show by a preponderance of the evidence that the requisite amount is met. *See Guglielmino*, 506 F.3d at 699. A preponderance of the evidence means it is more likely than not. *Sanchez,* 102 F.3d at 404. In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). But, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Notably, in neither his Motion nor Reply, does Placensia contend that the amount in controversy is less than $50,000 (or $75,000), and provides no evidence of such a claim, but rather solely argues that GM has not met this preponderance of the evidence standard.

      i. <u>Actual Damages</u>

Placencia argues that GM has failed to produce any evidence or specific facts regarding the actual damages. *See* Mot. at 9-10; *see* Reply at 3-5. GM contends that is has satisfied its burden, providing the Retail Installment Sale Contract ("RISC"), repair history, a loan payoff letter, and an accompanying declaration from one of the attorneys on this case as evidence for its actual damages calculation. *See* Opp. at 17-18; Dkt. Nos. 17-1, 17-4. The Court finds that these documents constitute summary-judgment type of evidence and show and substantiate the values used in GM's calculations made under the Song-Beverly damages formula, which satisfies the preponderance of the evidence standard. *See* Opp. at 17-18.

Restitution under the Song-Beverly Act is calculated by the amount directly attributable to use, calculated by multiplying the actual price of the vehicle paid/payable by "a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor." Cal. Civ. Code § 1793.2. The RISC provides that Placensia purchased the Subject Vehicle for $61,440.12 on March 28, 2021, with five miles on the odometer. *See* Opp. at 17; Ex. A, Dkt. No. 17-2 ("RISC"). The vehicle had a cash price of $47,640.00. RISC. Next, based on its own investigatory efforts, GM identified Placensia's first apparent relevant presentation of defects, on February 9, 2022. *See* Salas Decl., ¶ 3; Ex. B, Dkt. No. 17-3 ("Vehicle History Summary"). The Subject Vehicle's odometer at this time displayed 13,553 miles. Vehicle History Summary. Based on the five miles on the

odometer at the outset, GM calculated the mileage driven prior to discovery to thus be 13,548 miles. *See* Opp. at 17. GM used this number to correctly calculate the mileage offset according to the formula for restitution under the Song-Beverly Act, finding an offset amount of $5,378.60. *Id.* GM identified applicable optional third-party offsets of $1,095. *See* Opp. at 17; Cal. Civ. Proc. § 871.27. Finally, though Placensia did not appear to provide the entire history of loan repayment, based on the RISC, GM estimated that Placencia has thirty-two months left of the $731.43 monthly payments remaining as of the removal date. *Id.* GM asserts that based on discussions with Placensia's counsel, this matter is unlikely to resolve early, and thus it is reasonable to account for an additional twelve monthly financing payments, which leads to an unpaid finances deduction value of $8,777.16, bringing the total actual damages calculation to $46,189.36.[5]

The Court finds this to be a reasonable assumption, and not speculative, given the history of litigation between GM and Plaintiff's counsel. *See Arias*, 936 F.3d at 927 ("assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them.") (internal quotations omitted). Placensia argues in his Reply that GM must cite specific facts to show offsets from payments made. *See* Reply at 3-4. However, GM did rely on specific facts from the payment history, and thus the Court finds that it was entitled to make a reasonable assumption based on this history and its experience litigating with Plaintiff's counsel. Therefore, based on the detailed calculations provided, with reasoned assumptions as to certain values GM could not specifically procure, the Court finds that this value of $46,189.36 is supported by a preponderance of the evidence.

### ii. Civil Penalties

Placensia next contends that civil penalties are too speculative to include in the amount in controversy calculation. Reply at 5. The Song-Beverly Act permits a plaintiff to obtain a civil penalty of up to two times the amount of actual damages. Cal. Civ. Code § 1794.9(c). Placensia

---

[5] There has been a change of law regarding offsets under the Beverly-Song Act. *See* Opp. at 14; A.B. 1755, 2023-24 Leg. Reg. Sess. (Cal. 2024). This amendment entitles defendants to additional offsets, including unpaid financing. *See* Cal. Civ. Proc. Code § 871.27(f). Because this action was filed after January 1, 2025, the Court finds these additional offsets appropriate to consider.

argues that, despite making a request for two times actual damages in his prayer for relief, this civil penalties award is too speculative, and that GM did not provide any evidence to support it. *Id*. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Therefore, "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018).[6]

Here, the Court finds it appropriate to consider civil penalties. Placensia specifically requested civil penalties two times the amount of actual damages in his prayer for relief, did not deny that he is seeking such penalties in his Motion, and alleged GM willfully failed to comply with the Song-Beverly obligations. *See* Compl. at 2-6; *see generally* Mot. GM provided sufficient evidence of the actual damages, rendering the maximum civil penalties amount nonspeculative. *See* Cal. Civ. Code § 1794(c) and (e). Placensia did not provide evidence to the contrary. *See Arias*, 936 F.3d at 925 ("[W]hen a defendant's assertion of the amount in controversy is challenged ... both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."). Given Placensia's request for civil penalties and GM's non-speculative calculation of actual damages, the Court finds it is appropriate to include civil penalties, bringing the estimated damages to $138,568.18. Opp. at 18.

### iii. Attorney's Fees

---

[6] District courts are split on whether civil penalties under the Song-Beverly Act should be included in the amount-in-controversy calculation. *See e.g., Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995, 1004 (C.D. Cal. 2021) (finding that two-times the amount of actual damages in civil penalties under the Song-Beverly Act should be included in the amount in controversy calculation for the purpose of removal where a plaintiff alleges willfulness); *Wang v. FCA US LLC*, No. 24-2060, 2025 WL 1218745, at *2 (C.D. Cal. Apr. 28, 2025) (finding that the plaintiffs' arguments that civil penalties were speculative where they did not contest seeking them "border on frivolous"). *But see, e.g., Estrada v. FC US LLC,* No. 20-10453, 2021 WL 223249, at *3 (C.D. Cal. Jan. 21, 2021) (finding the defendant failed to carry its burden as to two times civil penalties because it did not explain why it would be awarded or provide any evidence); *Barrett v. FCA US LLC,* No. 21-243, 2021 WL 1263838, at *3 (C.D. Cal. Apr. 5, 2021) (refusing to include the defendant's "estimate of speculative civil penalties or attorneys' fees to meet the amount in controversy"). The Court finds it appropriate to consider civil penalties where the underlying actual damages has been found non-speculative, and the plaintiff has requested them in their complaint. *See* Opp. at 15-16; *see also* Reply at 6-9. To the extent Placensia cites district court opinions finding otherwise, the Court notes those as non-binding decisions.

Finally, Placensia argues that GM's arguments regarding attorney's fees are not grounded in any evidence and thus cannot be considered in the amount in controversy calculation. *See* Mot. at 10-11; *see also* Reply at 8-11. "[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). However, the Ninth Circuit still requires that "a removing defendant [] prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence." *Id.* at 795. Here, the Court finds that GM has failed to show by a preponderance of the evidence that attorney's fees should be included, but because the amount in controversy has already been met, this finding does not render removal improper. Unlike under actual damages where GM provided actual evidence to support its careful calculations, here GM merely alleges what Placensia's counsel has previously charged in similar cases and provides a general estimate of "at least $15,000 in attorney's fees" based on expected work. *See* Opp. at 18-19. Even if GM's estimates are accurate based on its experience litigating against Placensia's counsel, it is required to show this by a preponderance of the evidence. It has not. Therefore, the Court finds that attorney's fees are not part of the amount in controversy calculation, rendering a final amount of $138,568.18.

Accordingly, because GM has satisfied the amount in controversy by a preponderance of the evidence, the Court finds that GM's removal was proper.

### C. Placensia is Not Entitled to Attorney's Fees, Incurred as a Result of GM's Alleged Untimely Removal.

When remanding a case, a court may, in its discretion, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015). Typically, a court may only award fees and costs when "the removing party lacked an objectively reasonable basis for seeking removal." *Jordan*, 781 F.3d at 1184 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Courts in the Ninth Circuit apply "an objectively reasonable standard by looking to the clarity of the law at the time of removal." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008) (citing *Martin*, 546 U.S. at 141).

Here, the Complaint did not provide certainty with respect to the amount of actual damages or civil penalties. GM would have to conclude that the attorney's fees alone would surmount the $50,000 amount in controversy to remove on that basis. This is implausible at this early stage of the action, and the law on the issue is not clear enough to support an award of attorney's fees as a sanction to the losing litigant. *See Lussier*, 518 F.3d at 1066. Accordingly, the Court declines to exercise its discretion under 28 U.S.C. § 1447(c) to award Placensia attorney's fees and costs.

### IV. Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff's Motion to Remand (Dkt. No. 14) is DENIED.

IT IS SO ORDERED.

Dated:  December 2, 2025

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge